UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

| | |
|---|---|
| ADRIAN JIM, on Behalf of Himself and on Behalf of All Others Similarly Situated,  §§§§§ | |
| Plaintiff, § | |
| V.  §§ | CIVIL ACTION NO. 1:20-cv-00618 |
| CORECIVIC OF TENNESSEE, LLC,  §§§ | JURY TRIAL DEMANDED |
| Defendant.  §§ | |

**PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT**

1. This case challenges Defendant CoreCivic of Tennessee, LLC's ("Defendant") long standing policy of failing to properly compensate its non-exempt correctional and detention officers for all hours that they work. Specifically, Defendant required Plaintiff Adrian Jim ("Plaintiff") and the proposed Class Members to undergo security screenings without pay.

2. Plaintiff worked for Defendant exclusively in New Mexico brings this lawsuit under the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. § 50-4-22 et seq. and the common law of New Mexico to remedy the illegal pay practice and policy of failing to pay for all hours worked.

**SUBJECT MATTER JURISDICTION AND VENUE**

3. This Court has original jurisdiction over Plaintiff's claims pursuant to the Class Action Fairness Act found in 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and some of the class members are citizens of a state different than that of Defendant.

1

4. This Court has personal jurisdiction over Defendant because it has purposefully availed itself of the privileges of conducting activities in the state of New Mexico and established minimum contacts sufficient to confer jurisdiction. Defendant does business in New Mexico, advertises in New Mexico, employs workers in New Mexico, and the violations of the law forming the basis of this lawsuit occurred in New Mexico. Therefore, the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the constitutional requirements of due process. Defendant also had and continues to have continuous and systematic contacts with the State of New Mexico sufficient to establish general jurisdiction over it.

5. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise the claims in this Complaint took place in this district.

## PARTIES AND PERSONAL JURISDICTION

6. Plaintiff Adrian Jim is an individual residing in Gallup, New Mexico. Plaintiff worked for Defendant as a correctional officer during the class period.

7. The New Mexico Class Members are all current and former correctional officers and detention officers, and all employees in substantially similar positions, paid on an hourly rate basis and who worked in New Mexico for Defendant during at least one week during the four year period before the filing of this Complaint to the present.

8. Defendant CoreCivic of Tennessee, LLC is a foreign limited liability company organized under the laws of Tennessee. Said Defendant can be served with process by serving its registered agent Kennedy Moulton & Wells, P.C. at 2201 Third Street NW, Albuquerque, NM 87102.

## COVERAGE

9. At all material times, Defendant has been an employer within the meaning of N.M. STAT. ANN. § 50-4-21(B).

10. At all material times, Plaintiff and the Class Members were employees of Defendant with the meaning of N.M. STAT. ANN. § 50-4-21(C).

## FACTS

11. Defendant is a company that provides private prison services across the U.S. Defendant operates in New Mexico and has employed thousands of correctional officers and detention officers.

12. Plaintiff worked as an hourly, non-exempt, correctional officer for Defendant in New Mexico until 2019.

13. The primary job duty of the correctional officers and detention officers, including Plaintiff, was to manage and oversee the inmate population at the prison centers. The correctional and detention officers, including Plaintiff, were responsible for the custody and discipline of inmates and detainees held at correctional and detention centers operated by Defendant. Among other duties, the correctional and detention officers searched for contraband and provided security, count, feed, and supervised detainees and inmates.

14. Given the nature of the business, Defendant's facilities are secured by locked doors and metal detectors.

15. When the correctional and detention officers, including Plaintiff, arrived at the prison centers, they were required to undergo a security screening.

16. During the security screening, the correctional and detention officers, including Plaintiff, emptied their pockets, emptied their bags, removed their shoes, removed their belts,

removed their jackets, removed all metal objects, and submitted any personal items in their possession for inspection.

17. They then walked through a metal detector and underwent a further search if any metal objects were detected. After clearing the metal detector, the correctional and detention officers were able to gather their belongings.

18. The correctional and detention officers then put on their shoes, belts, and jackets.

19. After clearing the metal detector, the correctional and detention officers then had to pass through several security doors. This activity occurred prior to the correctional and detention officers, including Plaintiff, "clocking in" for time recording purposes.

20. This security screening time lasted approximately 10-20 minutes per day and went uncompensated by Defendant.

21. However, this time should have been compensated by Defendant.

22. The security screenings were required by Defendant and Plaintiff and the Class Members were told in advance the time they were required to be at the prison centers.

23. The security screenings were also necessary to the principal work performed by the officers – to provide security in the prisons and to search for contraband. The security screenings were also undertaken on Defendant's premises, were controlled and required by Defendant, and undertaken primarily for the benefit of Defendant and Defendant's business.

24. Indeed, Defendant required the correctional and detention officers to undergo this screening for the purposes of overall safety in the prison and to prevent the officers from inadvertently or intentionally bringing contraband into the prison centers.

25. These security screenings prevented weapons and other contraband from entering the prison, and in doing so, was necessarily tied to the correctional and detention officers' work of

providing security and searching for contraband. Thus, the security screening and the work of the correctional and detention officers shared the same purpose. In fact, the screening time was tied to the productive work of supervising and providing security by the officers.

26. Defendant could not have eliminated the screenings altogether without impairing the officers' ability to complete their work. If Defendant forego the security screening, officers could inadvertently or intentionally bring weapons or other contraband into the prison. The introduction of weapons and other contraband into the prison would most certainly result in a less secure prison and would impair the officers' ability to provide security, supervise the inmates/detainees, and search for contraband.

27. Additionally, preventing weapons and other contraband from entering the prison was an essential element of the officers' job duties with the ultimate purpose to maintain a secure prison environment.

28. Plaintiff and the Class Members were non-exempt employees.

29. Plaintiff and the Class Members were paid on an hourly rate basis.

30. When they worked more than forty hours in a workweek, they were entitled to overtime pay.

31. The pre-shift activities identified above were not incidental activities for the Plaintiff and Class Members, but instead, this time was integral and indispensable to their principal activity and is compensable.

32. Although Defendant employed electronic "clocking in" technology, this technology was not made accessible to Plaintiff and the Class Members before the security screening.

33. Due to the substantial pre-shift work, Plaintiff and the Class Members were not paid for all time worked each day and are owed significant unpaid wages.

34. Defendant's method of paying Plaintiff and the Class Members in violation of New Mexico law was willful and was not based on a good faith and reasonable belief that their conduct complied with the law. Defendant knew the requirement to pay for all time worked, but intentionally and/or recklessly chose not to do so.

## COUNT ONE:  VIOLATION OF THE NEW MEXICO MINIMUM WAGE ACT

35. Plaintiff incorporates by reference the allegations in the preceding paragraphs.

36. At all relevant times, Defendant has been, and continues to be, an "employer" within the meaning of the NMMWA.  At all relevant times, Defendant has employed and continues to employ, "employees," including the Class Members and Plaintiff, within the meaning the NMMWA.

37. The NMMWA requires payment of one and one-half times the employee's regular rate for each hour worked per week over 40 hours.  N.M. STAT. ANN. § 50-4-22(D).

38. As a result of the foregoing conduct, as alleged, Defendant has failed to pay wages due under the NMMWA, thereby violating, and continuing to violate, the NMMWA.

39. Plaintiff brings his claims on behalf of himself and all similarly situated employees pursuant to N.M. STAT. ANN. § 50-4-26(C)-(E) which authorizes a private cause of action for Plaintiff and the Class Members to recover their unpaid wages plus interest, an additional amount equal to twice the unpaid or underpaid wages, as well as costs of court and attorneys' fees.

## COUNT TWO: BREACH OF CONTRACT

40. Plaintiff realleges and incorporates all allegations contained in the foregoing paragraphs.

41. This claim is being pursued for those weeks in which the total number of hours worked by the Plaintiff and Class Members was less than 40 hours.

42. A valid and enforceable agreement existed between Plaintiff and Defendant, and the Class Members and Defendant, the terms and conditions of which include, but are not limited to, an agreement by Plaintiff and the Class Members to perform services for Defendant, and for Defendant to pay Plaintiff and the Class Members at an agreed hourly rate for all time in which they performed compensable work.

43. Plaintiff and the Class Members duly performed under the agreement at Defendant's direction and for its benefit.

44. Defendant failed and refused to perform its obligations under the agreement by failing to pay for all hours worked by the Plaintiff and Class Members.

45. Plaintiff and the Class Members are entitled to recover damages from these breaches for the last three years.

46. Plaintiff and the Class Members are entitled to attorney's fees for such breach of contract.

### COUNT THREE: QUANTUM MERUIT

47. Plaintiff incorporates all allegations contained in the foregoing paragraphs.

48. Plaintiff asserts that he and each Class Member provided valuable services to Defendant, that Defendant accepted those services, and that Defendant had reasonable notice that Plaintiff and the Class Members expected to be compensated for their services furnished to Defendant.

49. The reasonable value of the services provided but not paid for by Defendant with respect to this Rule 23 claim is the difference between the number of hours said Class Members

were paid in non-overtime weeks and the number of hours they actually worked, multiplied by each Class Member's then-applicable hourly rate as identified on their pay records. Alternatively, the reasonable value of the service provided but not paid for by Defendant is the average hourly rate for similar employees in New Mexico. However, in no event is the reasonable value of the services provided but not paid for by Defendant less than the applicable minimum wage rate in New Mexico for each hour worked.

## COUNT FOUR: UNJUST ENRICHMENT

50.   Plaintiff incorporates all allegations contained in the foregoing paragraphs.

51.   Defendant has been unjustly enriched at the expense of Plaintiff and the Class Members by failing to pay for work performed by Plaintiff and the Class Members.

52.   Defendant knowingly and/or intentionally accepted the benefit of the work performed by Plaintiff and the Class Members, despite its policy and practice of failing to pay Plaintiff and the Class Members for such work. In particular, Defendant received the benefit of the labor and services provided by Plaintiff and the Class Members.

53.   Such conduct demonstrates bad faith and undue advantage on the part of Defendant.

54.   It would be unjust and inequitable for Defendant to retain the benefit of the unpaid work performed by Plaintiff and the NM Law Class Members in non-overtime weeks.

## RULE 23 CLASS ACTION ALLEGATIONS

55.   Plaintiff incorporates by reference the allegations in the preceding paragraphs.

56.   Plaintiff brings his overtime and common law claims as a Rule 23 class action on behalf of the following class:

> All current and former correctional officers and detention officers, and all employees in substantially similar positions, paid on an hourly rate basis and who worked in New Mexico for Defendant during at least one week during the four year period before the filing of this Complaint to the present.

57. Although Plaintiff does not know the precise number of members of the proposed class, Plaintiff believes there are more than 40 individuals that fit into the class.

58. The members of the class are so numerous that their individual joinder is impractical.

59. The identity of the members of the class is readily discernible from Defendant's records.

60. Plaintiff and the proposed class on one hand, and Defendant on the other, have a commonality of interest in the subject matter and remedy sought, namely back wages plus penalties, interest, attorneys' fees and the cost of this lawsuit.

61. Common questions of law and fact exist to all members of the class. These questions predominate over the questions affecting individual class members. These common legal and factual questions include, but are not limited, to the following:

   a. Whether Plaintiff and the Class Members performed compensable work without pay;

   b. Whether security screening time is compensable under New Mexico law;

   c. Whether Plaintiff and the Class Members worked hours in excess of forty hours per work week; and

   d. Whether Plaintiff and the Class Members were denied overtime pay at a rate not less than one and one half times their regular rate under New Mexico law.

62. These and other common questions of law and fact, which are common to the members of the class, predominate over any individual questions affecting only individual members of the class.

63. Plaintiff's claims are typical of the claims of the classes because Plaintiff was not paid wages in accordance with New Mexico law just as it did with other New Mexico Class Members.

64. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the classes that he seeks to represent. Plaintiff has retained competent counsel, highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the class will be fairly and adequately protected by Plaintiff and his counsel.

65. The class action under New Mexico state law is superior to other available means for the fair and efficient adjudication of the state law claims of Plaintiff and the New Mexico Class Members. The injuries suffered by each individual class member are relatively small in comparison to the burden and expense of individual prosecution of a complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the classes individually to redress effectively the wrongs done to them; even if the members of the class could afford such individual litigation, the court system could not. Individualized litigation presents the possibility for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex, legal and factual issues of the case. By contrast, the class action presents far fewer logistical issues and provides the benefits of a single adjudication, economy of scale and comprehensive supervision by a single court.

## JURY DEMAND

66. Plaintiff and Class Members hereby demand trial by jury on all issues.

## **PRAYER**

67. For these reasons, Plaintiff prays for:

   a. An order certifying this case as a class action under Rule 23 for the New Mexico law claims;

   b. A judgment against Defendant awarding Plaintiff and the Class Members, and New all their unpaid wages, overtime compensation, and liquidated damages;

   c. An order awarding attorneys' fees, costs, and expenses;

   d. Pre- and post-judgment interest at the highest applicable rates; and

   e. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Don J. Foty
Don J. Foty
Texas State Bar No. 24050022
HODGES & FOTY, L.L.P.
4409 Montrose Blvd, Ste. 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
Email: dfoty@hftrialfirm.com

Anthony J. Lazzaro
Ohio Bar No. 0077962
*Will apply for admission Pro Hac Vice*
THE LAZZARO LAW FIRM, LLC
920 Rockefeller Building
614 W. Superior Avenue
Cleveland, Ohio 44113
Phone:  216-696-5000
Facsimile:  216-696-7005
Email: anthony@lazzarolaw.com

Hans A. Nilges
Ohio Bar No. 076017
*Will apply for admission Pro Hac Vice*
NILGES DRAHER, LLC
7266 Portage Street, N.W. Suite D
Massillon, OH 44646
Tel: (330) 470-4428

        Fax: (330) 754-1430
        Email: hans@ohlaborlaw.com

        ATTORNEYS FOR PLAINTIFF AND CLASS MEMBERS