**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO**

| | |
|---|---|
| ADRIAN JIM, on Behalf of Himself and on Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) )  No. 1:20-cv-00618-DHU-JFR |
| CORECIVIC OF TENNESSEE, LLC, | ) ) ) |
| Defendant. | ) |

**UNOPPOSED MOTION FOR APPROVAL OF
FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT**

Plaintiff Adrian Jim files this Unopposed Motion for Approval of Fair Labor Standards Act Collective Action Settlement. In support, Plaintiff respectfully states as follows:

**I.    INTRODUCTION**

Representative Plaintiff Adrian Jim respectfully moves for approval of the proposed FLSA opt-in Settlement reached by the Parties and memorialized in the Settlement Agreement and Release ("Settlement" or "Agreement") attached as Exhibit A.

The proposed settlement will resolve bona fide disputes involving overtime compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as state wage-and-hour statutes. If approved, the Settlement will provide for the issuance of notice to all Class Members within 30 days of approval by this Court. Class Members will have 60 days to join the Settlement by executing and returning Consent and Release Forms. Because the proposed Settlement is an FLSA *opt-in* settlement, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, no fairness hearing is required or requested by the Parties.[1]

---

[1] *See Moore v. Ackerman Inv. Co.*, C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel and an experienced mediator. If approved, the Settlement will make settlement payments available to the Class Members who elect to participate in the Settlement. Those who do not elect to participate in the Settlement will not be included or release their claims.

The settlement documents submitted for approval consist of the following:

Exhibit A:   Settlement Agreement and Release

Exhibit B:   Notice of Settlement of Lawsuit, with attached Consent and Release Form entitled Consent to Opt-Into Lawsuit and Release of Claims

Exhibit C:   Order Approving Settlement

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   The Action

On June 25, 2020, Plaintiff filed this lawsuit against Defendant CoreCivic of Tennessee, LLC ("Defendant") based on alleged off-the-clock work performed by Plaintiff and other similarly situated employees. (Dkt. 1). The central allegation was that Plaintiff and other Correctional Officers and Detention Officers were denied pay for the time they spent completing security screenings prior to the start of their shifts. It was alleged by the Plaintiff that he and other

---

requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

2

Correctional Officers and Detention Officers were required to undergo the security screenings, they were conducted on the premises of Defendant, and the security screenings were integral and indispensable to their principal activity which was not to ensure the safety and security of the prisons. The Plaintiff sought unpaid overtime wages for all hours worked over 40 in a week that were not paid at the rate of time and one half the regular rate of pay.

Defendant denied the allegations as set forth in the Complaint. Instead, Defendant contends that the time spent completing security screening is not compensable under any state or federal law.

### B.  Negotiation of The Settlement

During the discovery period, the Parties informally exchanged significant information as to the claims of the Plaintiff and Class Members and the defenses raised by Defendant. Defendant provided Plaintiff's Counsel with a sampling of pay and time records for the Class Members during the relevant time period covered by this lawsuit. Defendant had previously provided Plaintiffs' Counsel Lobby Management System records (records which show the time each person entered and exited the facility) for certain officers. Using these records, Plaintiff calculated what he believed to be potential amount owed for unpaid wages.

In March 2021, the Parties attended private mediation with Mike Ungar, a mediator with extensive experience in wage and hour litigation. During mediation, the Parties discussed potential damages, the applicable statute of limitations, the possibility of decertification of the collective action, and the merits of the case. At that time, the Parties were unable to reach an agreement. However, the Parties continued to exchange information and discuss a potential resolution. Fortunately, the Parties were able to reach an agreement. Now Plaintiff requests that the Court approve this settlement, and Defendant does not oppose Plaintiff's request. The final terms of the settlement are reflected in the attached Exhibit A.

### C.     The Settlement Terms

If approved, the Settlement will cover Representative Plaintiff and all of the Class Members who elect to participate in the Settlement by signing and returning Consent and Release Forms.  The Settlement includes a total of approximately 1,100 Putative Class Members.

The Total Eligible Settlement Amount is Eight Hundred Thousand Dollars, which sum, as governed by Exhibit A will cover: (a) all of the Individual Payments to the Class Members; (b) Representative Plaintiff's Service Award; (c) Class Counsel's attorneys' fees and expenses; and (d) the Settlement Administrator's expenses of administering the settlement.

$516,041.48 of the Total Eligible Settlement Amount will be divided into Individual Payments and paid to the Class Members who opt in.  The Individual Payments are calculated proportionally on each Class Member's alleged overtime damages during the class period.  The Individual Payments have been calculated by Class Counsel and approved by Defense Counsel, and can be found at Appendix 1 to the Parties' Settlement Agreement.

Five Thousand Dollars ($5,000.00) of the Total Eligible Settlement Amount will be paid to Representative Plaintiff Adrian Jim, in addition to his Individual Payment, for his services as the Representative Plaintiff.  In addition, Class Counsel is requesting approval for $266,666.67 for attorneys' fees and $4,349.93 in expenses incurred in this matter.  In addition, $7,941.92 of the settlement will be used to pay the third-party Settlement Administrator.

In exchange, the Action will be dismissed, and the Class Members will release Defendant from federal and state wage-and-hour claims, rights, demands, liabilities and causes of action asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and correspondence state wage and hour laws.

4

To inform Class Members of the Settlement, the Parties have submitted, as Exhibit B, the proposed Notice of Settlement with an attached Consent and Release Form. The Notice will be mailed to the Class Members at their last known home addresses according to records maintained by Defendant, and any updated addresses obtained by the Settlement Administrator. The Class Members who sign and return Consent Forms will participate in the Settlement and their claims will be released.

### III.   THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval pursuant to § 216(b) of the FLSA. As shown herein, approval is warranted on all scores.

#### A.   Standard for Approval

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946)).

"Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). "In the class action context in particular, 'there is an overriding public interest in favor of settlement,' because settlement of complex disputes" minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980) (citation omitted). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

5

In the Tenth Circuit, the following factors are analyzed in determining whether this standard is met: (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002). As discussed below, the Settlement meets the standards for approval. As a result, Plaintiff and Defendant believe that the Settlement should be approved so that notice can be provided to Class Members.

### B. The Proposed Settlement Is "Within the Range of Possible Approval."

The Settlement is beneficial to the Class Members in light of the complexities of the case. First, the Parties vigorously disputed whether the time spent by Plaintiff was compensable time under New Mexico law or federal law. Second, even if the time spent working by Plaintiff off-the-clock was compensable, Plaintiff carried a heavy burden to prove that it was not *de minimis*. Plaintiff argued that he was required to arrive early to go through Defendant's security check points prior to clocking in each day. There are extensive factual disputes concerning the length of time that it took for Plaintiff and other Correctional Officers and Detention Officers to go through the security check point. Further, Defendant vigorously disputes Plaintiff's damage model and asserts that class certification is improper. Given the disputed factual and legal issues in the case, the settlement represents a reasonable resolution of this action and eliminates the risk that the Class Members might otherwise recover nothing.

#### *1. The Proposed Settlement Was Fairly and Honestly Negotiated.*

In this case, the Parties jointly seek to settle this matter and "[t]here are numerous indicia that the settlement negotiations in this case have been fair, honest and at arm's length." *Lucas*,

234 F.R.D. at 693. "First, the parties to this litigation have 'vigorously advocated their respective positions throughout the pendency of the case.'" *Lucas*, 234 F.R.D. at 693. The Parties were represented by "counsel with expertise on the [wage and hour laws] and complex class action litigation." Counsel for both Parties are experienced litigators who practice wage and hour cases on a daily basis and who have been involved in millions of dollars' worth of settlements of such actions during their careers. Moreover, the Parties utilized a well-known third-party mediator, who is familiar with negating wage and hour cases, to assist them in reaching the Settlement. These factors support the integrity of the Parties' settlement negotiations.

### 2. *Serious Questions of Law and Fact Exist.*

In evaluating a settlement, "[t]here is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation." Alba Conte & Herbert Newberg, Newberg on Class Actions §11.45 (4th ed. 2002). Although it is not the role of the Court at this stage of the litigation to evaluate the merits, it is clear that the Parties could reasonably conclude that there are serious questions of law and fact that exist such that they could significantly impact this case if it were litigated." *Lucas*, 234 F.R.D. at 693-94. First, the Parties disputed whether this case could be maintained as a class action or collective action. Thus, without this settlement, the Class Members may not get notice and may not be entitled to compensation. Second, there has been a serious disagreement amongst the Parties about whether the time spent by Plaintiff going through the security check point before clocking in was compensable, and if so, whether that time was *de minimis*. After discovery, Defendant could have prevailed on summary judgment with respect to some or all of Plaintiff's claims. "It is thus clear that there were numerous factual and legal questions yet to be addressed in this litigation that could have had a serious impact on the results

for either side." *Lucas*, 234 F.R.D. at 694. This factor also supports granting the Motion for Approval of the Settlement.

### 3. *The Value of an Immediate Recovery Outweighs the Mere Possibility of Future Relief After Protracted and Expensive Litigation.*

"If this case were to be litigated, in all probability it would be many years before it was resolved." *Lucas*, 234 F.R.D. at 694. Many years and significant costs would be required for the Parties to litigate the claims, to complete the discovery, participate in pretrial proceedings, and file summary judgment motions. The summary judgment decision and/or class certification decision could be appealed to the Tenth Circuit (and possibly beyond), which could take many years to complete. Assuming the Parties went to trial and verdict, there is a possibility that the verdict could be reversed. In short, the ultimate resolution of this action on the merits (and in turn, compensation to Class Members) via trial and appeal is indefinite at best.

"By contrast, the proposed settlement agreement provides the class with substantial, guaranteed relief." *Lucas*, 234 F.R.D. at 694; *McNeely*, 2008 U.S. Dist. LEXIS 86741, at *37 (finding that class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted."). An evaluation of the benefits of the Settlement must also be tempered by the recognition that any compromise involves concessions on the part of the Parties. Indeed, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). Thus, this factor also weighs in favor of granting approval.

### 4. *The Judgment of the Parties That the Settlement Is Fair and Reasonable.*

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695; *McNeely*, 2008 U.S. Dist. LEXIS 86741, at *37-*38 (same). "Here, the

8

Parties' counsel — among whom are attorneys with substantial experience in complex class action litigation and [employment] class actions — unanimously support this settlement." *Lucas*, 234 F.R.D. at 695. As such, this factor further supports granting approval.

### C. The Settlement is Fair and Reasonable in Light of the Uncertainty of the Outcome.

The proposed Settlement Agreement is fair to the Plaintiff and Class Members because it provides for a recovery based upon actual records of the Class, with each Class Member allocated a separate amount based upon his/her dates of employment. The settlement allows each Class Member to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total damages available to all Class Members in the aggregate, exclusive of attorneys' fees and costs. As part of the settlement, the Parties also agreed to an "incentive award" for Plaintiff based on his participation in assisting Counsel in obtaining this Settlement for such a large Class.

Plaintiff's Counsel calculated the alleged overtime compensation owed to Plaintiff and Class Members by using an average of 8.38 minutes per shift work that was allegedly off-the-clock and adding that amount of time to each shift worked by the Plaintiff and Class Members. The 8.38 minute average was derived from an analysis of the Lobby Management System records which showed the time when Correctional Officers and Detention Officers arrived at the facilities. That time was then compared to the clock-in time for the Correctional Officers and Detention Officers. Plaintiff's Counsel calculated that, on average, the amount of time was 8.38 minutes prior to clocking in for the start of the shift. If after adding the 8.38 minutes per shift to the amount worked on the clock produced more than 40 hours for the week, the unpaid overtime wages were then calculated.

Plaintiff calculated the unpaid overtime wages at approximately $735,145.18. Defendant disputed Plaintiff's calculations and alleged that: (a) the actual average time that Plaintiff and the

9

Class Members spent in the security screenings was less than 8.38 minutes per shift; (b) the security screenings were not compensable under the FLSA or state law; and (C) the action would likely be decertified since Plaintiff would not be able to establish that he and all Class Members engaged in compensable hours worked while off the clock (or the amount of any such alleged work) using representative evidence. The settlement of $800,000 provides fair and reasonable compensation when considering the risks to both sides. Additionally, any Class Member owed less than $50.00 will receive a minimum pay of $50.00. Accordingly, the settlement proceeds are fair, reasonable and adequate

### D. The Attorneys' Fees Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). "The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Albu v. Delta Mech. Inc.*, No. 13-CV-03087-PAB-KMT, 2015 WL 4483992, at *5 (D. Colo. June 30, 2015), report and recommendation adopted, No. 13-CV-03087-PAB-KMT, 2015 WL 4467434 (D. Colo. July 22, 2015)(citing *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994) (citing *United Slate, Tile & Composition Roofers v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495 (6th Cir.1984)). "Since such claims frequently are for small amounts of money, '[c]ourts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here 'encourages the vindication of congressionally identified policies and rights.'" *Id.*

The attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiff and the Opt-In Plaintiffs. In the instant matter, Counsel undertook representation under a contingent-fee basis.

10

In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Court held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc*. 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement much like the one presented here. Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

11

In determining the reasonableness of the one-third fee, the *Bessey* court considered the comparative data about class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). <u>This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement</u>.

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement in the present case is exemplary. The settlement represents 109% of the total amount owed for unpaid wages. The allocation to the Class Members and Individual Payments represents 70% of the overtime compensation Plaintiff and the Class Members were allegedly denied for 8.38 minutes *after* deduction of the service award to Plaintiff, attorneys' fees and costs, the costs of the mediator, and the cost of a third-party settlement administrator.

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

The attorneys' fees requested by Class Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing the

12

potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, Plaintiff and the Class Members were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here. Class Counsel has worked diligently in representing Plaintiff and Class Members. Prior to filing the Action, Class Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant. This included interviewing and obtaining declarations from numerous putative Class Members, and obtaining consent forms and declarations from Opt-In Plaintiffs.

Court across the country, including courts in the 10th Circuit have found that "in determining the reasonableness of fees in common fund cases, the customary fee award is typically derived from a percentage of the fund. *Peterson v. Mortg. Sources, Corp., No.* CIV.A. 08-2660-KHV, 2011 WL 3793963, at *12 (D. Kan. Aug. 25, 2011)(awarding fees in the amount of 30.5% of the fund). The 10th Circuit has found that attorney's fees up to 58% of the overall settlement can be reasonable. *Id.*

In *Barbosa v. Nat'l Beef Packing Co., LLC, No.* CIV.A. 12-2311-KHV, 2015 WL 4920292, at *11 (D. Kan. Aug. 18, 2015), the Court stated:

> Plaintiffs' combined requested fee and cost award is 42 per cent of the total settlement amount. Plaintiffs' requested fee alone is 33 per cent of the total settlement amount. Here, the percentage of the fund requested by counsel is within the customary percentage of the fund approved by this Court and

>also within the customary fee range which counsel appears to charge in similar matters.

As the 10th Circuit has stated in *Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994):

>The settlement in this case created a "common fund" from which the plaintiff class obtained a benefit. Attorneys' fees are appropriately awarded from that fund, on the theory "that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 749, 62 L.Ed.2d 676 (1980); *see also Aguinaga v. United Food & Commercial Workers Int'l Union*, 993 F.2d 1480, 1482 (10th Cir.1993); *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir.), cert. denied, 488 U.S. 822, 109 S.Ct. 66, 102 L.Ed.2d 43 (1988).

Class Counsel's request of attorneys' fees in the amount of one-third is proper and reasonable. *See Sanders v. MPRI, Inc.*, No. 5:08–cv–00345–R (W.D. Okla. July 9, 2009)(approving fees in an FLSA collective action of 38.5% of the total settlement plus litigation costs); *McNeely v. Natl'l Mobile Health Care, LLC*, No. CIV–07–933–M, 2008 WL 4816510, at *15 (W.D. Okla. Oct.27, 2008) (approving fees equal to 33% of total settlement); *Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins.*, Nos. CIV 89–822–T and CIV 89–1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993)("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis."); *In re Public Service Co. of New Mexico*, No. 91–0536M, 1992 WL 278452 (S.D.Cal.1992)(approving a fee award of 33.4% on a $33 million recovery). Furthermore, Class Counsel's one-third fee request has been approved in similar collective and class actions in Federal Courts. See, e.g., *Shumate v. Genesco, Inc.*, et al, Case No. 1:17-cv-03574 (S.D. Ind.); *Klaus v. Humana Pharmacy, Inc.*, Case No. 1:19-cv-01025 (S.D. Ohio); (*Rosenbohm v. Cellco Partnership*, Case No. 2:17-cv-00731 (S.D. Ohio); *Grayer, et al. v. Kennametal, Inc.*, Case No. 1:16-cv-01382 (N.D. Ohio); *Allen v. Sutherland Global Services*, Case No. 6:17-cv-6059 (W.D.N.Y); *Lawrence v. Platinum Home*

*Helper*, Case No. 1:17-cv-1479 (N.D. Ohio); *Fullerton v. Golden Flake Snack Foods, Inc.*, Case No. 3:17-cv- 00296 (N.D. Florida); *Miller v. Flowers Baking Co. of Ohio*, Case No. 3:17-cv-725 (N.D.NY.); *Caringi v. Relentless Recovery*, Case No. 1:16-cv-2236 (N.D. Ohio); *Tabor v. A Better Alternative to Senior Care, Inc.,* Case No. 1:16-cv-1281 (N.D. Ohio); *Castro v. Heart Home Care, LLC*, Case No. 1:16-cv-571 (N.D. Ohio); *Bainbridge v. Medline Industries*, Case No. 5:16-cv-00555 (N.D. Ohio); *Terry v. All Hearts Home Health Care*, Case No. 1:16-cv-515 (N.D. Ohio); *Webber v. Nine Energy*, Case No. 4:15-cv-2406 (S.D. Texas); *Swiger, et al. v. Utz Quality Foods, Inc.*, Case No. 1:15-cv-2196 (M.D. Penn); *Houston, et. al. v. Progressive Casualty Insurance Co.*, Case No. 1:15-cv-01853 (N.D. Ohio); *Hillebrandt, et al. v. Horizontal Wireline Services, LLC, et al.*, Case No. 2:15-cv-1307 (W.D. Pa); *Rucker v. Quality Blow Molding,* Case No. 1:15-cv-1039 (N.D. Ohio); *Green v. H.A.D., Inc.,* Case No. 2:15-cv-933 (S.D. Ohio); *Douglas, et al. v. J&K Subway, Inc.,* Case No. 4:14-cv-2621 (N.D. Ohio); *McPherson v. Horseshoe Cleveland*, Case No. 1:14-cv-02475 (N.D. Ohio); *Smith v. CMHA*, Case No. 1:14-cv-1409 (N.D. Ohio); *Armbruster v. City of Cleveland*, Case No. 1:13-cv-2626 (N.D. Ohio); *Williams v. Beckett Air, Inc.*, Case No. 1:12-cv-2796 (N.D. Ohio); *Welch v. Incept Corporation*, Case No. 5:12-cv-1775 (N.D. Ohio); *Malaj v. Gohlke*, Case No. 1:11-cv-1578 (N.D. Ohio); *Campbell v. Judson Services*, Case No. 1:11-cv-906 (N.D. Ohio); *Murphy v. 1-800-Flowers*, Case No. 1:10-cv-1822 (N.D. Ohio); *Miller v. National Enterprise Systems*, Case No. 1:10-cv-1664 (N.D. Ohio); *Osolin v. Turocy & Watson LLP*, et al, Case No. 1:09-cv-2935 (N.D. Ohio); *Kelly v. National Enterprise Systems*, Case No. 1:09-cv-2268 (N.D. Ohio); *McNelley v. Aldi*, Case No. 1:09-cv-1868 (N.D. Ohio); *Rotuna v. West Customer Management Group*, Case No. 4:09-cv-1608 (N.D. Ohio); *Jackson v. Papa John's*, Case No. 1:08-cv-2791 (N.D. Ohio); *Dillworth v. Case Farms*, Case No. 5:08-cv-1694 (N.D. Ohio); *Fincham v. Nestlé Prepared Foods Company*, Case No. 1:08-cv-73 (N.D. Ohio); *McGhee v. Allied Waste Industries*, Case No. 1:07-cv-1110 (N.D. Ohio).

### E. The Parties have Agreed on a Fair and Reasonable Notice Plan to Administer the Settlement.

The Parties have agreed upon a proposed class notice, as well as agreeing to utilize a neutral third party claims administrator who specializes in wage and hour class actions. The third party administrator will be responsible for both disseminating notice and issuing final settlement checks to all Class Members who opt-in to the Settlement.

### F. The Settlement Should Be Approved.

The terms of the settlement have been approved by the Parties and their respective counsel. The settlement was negotiated at arms' length. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

Again, the Settlement Agreement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the Settlement, the Parties engaged in extensive negotiations concerning the specific terms of the Settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard fought negotiations. Ultimately, there can be no question that this Settlement Agreement represents fair value for the Class Members.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff moves for an order approving the settlement as fair and reasonable. For the Court's convenience, a proposed order is attached hereto.

DATE: April 29, 2022

                                    Respectfully submitted,

                                    By: */s/ Don J. Foty*  
Don J. Foty  
Texas State Bar No. 24050022  
HODGES & FOTY, L.L.P.  
4409 Montrose Blvd, Ste. 200  
Houston, TX 77006  
Telephone: (713) 523-0001  
Facsimile: (713) 523-1116  
Email: dfoty@hftrialfirm.com  

Hans A. Nilges  
Ohio Bar No. 076017  
NILGES DRAHER LLC  
7034 Braucher St., N.W. Suite B  
North Canton, OH 44720  
Tel: (330) 470-4428  
Fax: (330) 754-1430  
Email: hans@ohlaborlaw.com  

Anthony J. Lazzaro  
Ohio Bar No. 0077962  
THE LAZZARO LAW FIRM, LLC  
920 Rockefeller Building  
614 W. Superior Avenue  
Cleveland, Ohio 44113  
Phone: 216-696-5000  
Facsimile: 216-696-7005  
Email: anthony@lazzarolaw.com  

ATTORNEYS FOR PLAINTIFF AND FLSA CLASS MEMBERS

**CERTIFICATE OF SERVICE**

     I hereby certify that on April 29, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

                                    */s/ Don J. Foty*  
                                  One of the Attorneys for Plaintiff